UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABG PRIME GROUP, INC.,

    Plaintiff/Counter-Defendant.

v.

INNOVATIVE SALON PRODUCTS, INC.,
d/b/a LOMA

    Defendant/Counter-Plaintiff,

Case No. 17-12280
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER DENYING MOTION TO DISMISS COUNTER-COMPLAINT [12]**

Gary Greenberg, Adam Greenberg, and Bryan Acrich formed ABG Prime Group to resell beauty supplies on Amazon. (R. 1, PID 3.) In 2016, ABG Prime opened an Amazon store and began to sell LOMA-brand hair-care products. (*Id.* at 4–6.) ABG buys LOMA's products from an authorized LOMA distributor and then resells the identical, unopened products on ABG's Amazon store. (*Id.* at 5–6.)

But LOMA never agreed to let ABG sell its products on Amazon. So starting in 2017, LOMA filed a series of complaints with Amazon requesting that the retail giant shutter ABG's store. (*Id.* at 6–7.) Each time, Amazon suspended ABG's account. (*Id.* at 7–8.)

After the final Amazon suspension, and anticipating an eventual trademark suit from LOMA, ABG filed a declaratory judgment action on LOMA's trademark rights. According to ABG, because it lawfully purchased LOMA's products from a LOMA distributor, the first-sale doctrine protects ABG from any liability for trademark infringement.

LOMA disagrees. LOMA filed a counter-complaint alleging trademark infringement and false designation of origin. ABG now moves to dismiss the counter-complaint.

**I.**

The following factual allegations from the counter-complaint are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

David Hanen founded Innovative Salon Products to sell high-quality beauty supplies to salons, spas, barbershops, and beauty schools (a market informally known as the salon channel of trade). (R. 10, PID 92.) In 1991, Hanen first started using the LOMA mark. Fourteen years later, the U.S. Patent and Trademark Office added the LOMA mark to the Principle Register. (*Id.*) The mark is now incontestable under 15 U.S.C. § 1065. (*Id.*) In that time "the mark has become well known among consumers as a distinctive source indicator of high quality goods." (*Id.* at PID 92–93.)

LOMA is a source indicator because the products come with training, support, and warranties. (R. 10, PID 94.) LOMA staff, including Hanen, visit salons to show salon staff how to use LOMA products and provide one-on-one consultations. (*Id.*) And LOMA provides the same level of training and support to its distributors. (R. 10, PID 94.) When LOMA brings a new distributor on board, staff train the distributor's salespeople on the proper uses for LOMA products. (*Id.*) LOMA wants to ensure that distributors educate salons and spas on the proper uses for LOMA products, and understand LOMA's product support. (*Id.*)

The centerpiece of LOMA's product support is an unconditional satisfaction and replacement guarantee. LOMA recognizes that salons and their hair-care professionals are the best ambassadors for the LOMA brand. (*Id.*) So LOMA tells the distributors about the guarantee, and once LOMA products reach salon and spa shelves, LOMA's Brand Managers conduct routine visits to salons and spas to tell the hair-care professionals about the guarantee. (R. 10, PID 95.) It is this guarantee that ultimately persuades salons and customers to purchase the products and has

been a primary driver of LOMA's growth. (*Id.*) Within the salon channel of trade, LOMA has been one of the "fastest growing brands in the professional hair care business . . . for each of the last two years." (*Id.*)

LOMA strives to ensure that its products are sold exclusively within the salon channel of trade. (R. 10, PID 96.) LOMA's distributors must sign a non-diversion agreement restricting to whom distributors may sell LOMA products. (*Id.*) Under the terms of the non-diversion agreement, distributors may only sell to "Salon[s], Spa[s], Barbershop[s][,] or Beauty Schools that have no less than 50% of the square footage of their facility devoted to professional services and no more than 50% of the square footage of the store dedicated to retail display and sales." (*Id.* at 97.) The non-diversion agreement further prohibits salons, spas, barbershops, and beauty schools from reselling LOMA products on the internet. (*Id.* at PID 97–98.)

Windsor Beauty Supply is an authorized distributor of LOMA products and signed LOMA's non-diversion agreement. (*Id.*) ABG purchased LOMA's products from Windsor. (R. 10, PID 97.) And yet, ABG does not operate a salon, spa, barbershop, or beauty school. (*Id.* at 98.) Instead, 100 percent of ABG's revenue comes from selling its wares on Amazon. (*Id.*) So Windsor never should have sold LOMA products to ABG Prime. As a result, ABG Prime is not an authorized retailer of LOMA products. (*Id.* at 99.)

So LOMA brings Lanham Act claims against ABG Prime. And ABG Prime moves to dismiss them.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows ABG to test the legal sufficiency of LOMA's counter-complaint. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). Assessing the counter-complaint, the plausibility standard governs.

*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility means LOMA has plead "factual content that allows the [Court] to draw the reasonable inference that [ABG Prime] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To show that ABG Prime is liable for the misconduct alleged, the counter-complaint's "factual content" must show "*entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Rejecting any conclusory statements or "threadbare recitals" of claim elements—and accepting as true all well-pleaded factual content—the Court makes all reasonable inferences in LOMA's favor. *Iqbal*, 556 U.S. at 678.

### III.

LOMA alleges that only authorized retailers may offer the unconditional satisfaction guarantee on LOMA products. (R. 10, PID 99.) As ABG is not an authorized retailer, LOMA says the LOMA products ABG sells do not come with the unconditional satisfaction and replacement guarantee. (*Id.*) And because the unconditional guarantee is so important to customer purchasing decisions, its absence means ABG sells a materially different product than a LOMA product sold by an authorized retailer. (*Id.* at PID 91.) The material difference threatens to dilute LOMA's goodwill (*id.*), and causes consumer confusion (*id*. at PID 101). So LOMA brings trademark infringement and false-designation-of-origin claims against ABG Prime. (R. 10.)

The Court will take in turn ABG Prime's arguments to dismiss them.

### A.

Under the Lanham Act, trademark infringement occurs when a company uses a "reproduction, counterfeit, copy, or colorable imitation of a registered mark" in a way that causes confusion as to the origin or source of the goods. 15 U.S.C. § 1114(1)(a); *see also Hensley Mfg. v. ProPride, Inc*, 579 F.3d 603, 610 (6th Cir. 2009). So "'confusion among consumers regarding the

4

origin of the goods offered'" is "'the touchstone of liability'" for trademark infringement. *Hensley Mfg.*, 579 F.3d at 610 (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)). Generally, courts apply an eight-factor test to analyze the likelihood of consumer confusion. *Hensley Mfg.*, 579 F.3d at 610.

But ABG Prime says there is no need to bother analyzing consumer confusion, as the Lanham Act does not apply. To even trigger Lanham Act protection in the Sixth Circuit, LOMA must first establish that ABG uses "the challenged mark in a way that identifies the source of [the] goods." *Hensley Mfg.*, 579 F.3d at 610 (citing *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694 (6th Cir. 2003)). ABG Prime says all it does is buy LOMA products bearing a true mark and then restock the goods on a virtual shelf in a virtual store. And ABG says it makes no attempt to indicate that it is the maker of the LOMA products. So ABG says it uses the LOMA mark in a "non-trademark way and trademark infringement laws . . . do not even apply." (R. 12, PID 124 (citing *Hensley Mfg.*, 579 F.3d at 610).)

ABG Prime is at least correct to argue that the Sixth Circuit takes a unique approach to the Lanham Act. In trademark-infringement cases, the Sixth Circuit interprets the Lanham Act to require a threshold inquiry into whether a defendant uses a trademark "in a non-trademark way." *Id.* The Sixth Circuit's threshold inquiry originates with *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687 (6th Cir. 2003).[1] Interactive Products produced and marketed the Laptop Traveler. The Laptop Traveler mounted to parts of a car's interior and served as a

---

[1] The Sixth Circuit's approach has been criticized. See 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed. 2018) ("The [Sixth Circuit's] eccentric and peculiar view is erroneous because it finds no support either in the Lanham Act or in precedent."); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) ("The Sixth Circuit's test would lead to the dismissal of [trademark-infringement] claims without addressing what is beyond doubt the central question[:] . . . whether consumers were actually confused by the allegedly infringing product.").

portable laptop desk. *Id.* at 692. To sell the laptop desk, Interactive Products contracted with a2z Mobile Office Solutions. *Id.* A2z offered the Laptop Traveler for sale on a specific page on its website. *Id.* And the URL's post-domain path included the term "laptraveler," i.e., after the domain portion of the URL, "a2zsolutions.com/," the URL was, "desks/floor/*laptraveler*/dkfl-lt.htm." *Id.* at 691–92 (emphasis added).

Eventually, relations between a2z and Interactive Products soured. *Id.* at 693. Interactive Products directed a2z to remove the Laptop Traveler from its website, and in its place, a2z substituted its own portable-laptop desk: the Mobile Desk. *Id.* But a2z never changed the website's URL. *Id.* So the a2z URL directing customers to the Mobile Desk was still "a2zsolutions.com/desks/floor/*laptraveler*/dkfl-lt.htm". *Id.* (emphasis added).

Interactive Products sued a2z, alleging trademark infringement. The district court found no likelihood of consumer confusion and granted summary judgment to defendants; the Sixth Circuit affirmed but on different grounds. *Id.* at 690. Rather than assess the likelihood of consumer confusion, the Sixth Circuit reasoned that a2z's inclusion of "laptraveler" in the URL did not identify the source of the product. *Id.* at 695. So putting "laptraveler" in a post-domain path did not even implicate trademark law, thus rendering unnecessary any analysis of consumer confusion. *Id.* at 698.

Citing *Interactive Products*, ABG Prime argues restocking a good for sale on a virtual shelf does not identify the source of a good. (R. 12, PID 124–25.) In *Interactive Products*, the Sixth Circuit reasoned that a2z's post-domain path was not a source indicator because a URL's post-domain path just revealed the website designer's way of organizing the site's pages. *Interactive Prods. Corp.*, 326 F.3d at 698. And when e-consumers see a mark in the post-domain portion of a URL, they do not connect that mark with products they see on the webpage. *Id.* So neither the site

6

nor consumers link the mark to a particular source. *Id.* Put another way, a2z labeled a shelf in its virtual store "laptraveler," and placed on that shelf portable desks from many sources.

But ABG Prime's argument misses the mark. ABG Prime does not use LOMA to identify a shelf; ABG Prime puts actual LOMA products bearing the LOMA mark on a shelf. And LOMA makes plain that the LOMA mark is a "*source indicator* for products sold under that trade name and brand . . . ." (R. 10, PID 94 (emphasis added).) Accepting LOMA's allegations as true, consumers browsing ABG's Amazon store see actual LOMA products and connect the mark to its source. So LOMA's counter-complaint successfully surpasses the Sixth Circuit's threshold inquiry and LOMA may challenge the sale of its actual, genuine product by an unlicensed seller.

Next, ABG Prime says even if it uses the LOMA mark in a way that identifies the source of the products, the First Sale Doctrine insulates ABG Prime from liability. (R. 12, PID 127.) ABG Prime says they do nothing more than offer genuine, unopened LOMA products for sale. And generally speaking, even an unauthorized reseller of "genuine goods bearing a true mark" is not liable for trademark infringement. *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 691–92 (5th Cir. 1993) (finding that First Sale Doctrine shields unauthorized retailer of hair-care products from trademark liability); *see also Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992); *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 318 (S.D. N.Y. 2007). "[T]rademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368–69 (1924)).

7

In response, LOMA says the First Sale Doctrine does not apply. ABG does more than simply restock and resell; ABG sells a materially different LOMA product. LOMA alleges that ABG sells a LOMA product lacking an unconditional satisfaction and replacement guarantee—in essence a product missing a warranty term. (R. 10, PID 99; R. 25, PID 273–74.)

There is a material difference exception to the First Sale Doctrine. *See Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071 (10th Cir. 2009) (finding First Sale Doctrine does not apply where an unauthorized reseller resells a product missing a warranty term); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006) (finding First Sale Doctrine does not apply to an unauthorized retailer of tanning lotions using a trademark to give consumers the impression they are an authorized retailer). The exception exists primarily because a material difference in a product is "likely to cause consumer confusion and could dilute the value of the trademark." *See Brilliance Audio, Inc. v. Haights Cross Communs., Inc.*, 474 F.3d 365, 370 (6th Cir. 2007). And "a physically identical product is nevertheless 'materially different' from the genuine article if 'the bundle of services' that attach to the genuine article is not available to the consumer." *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 224 (E.D. N.Y. 2011) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib. LLC*, 522 F. Supp. 2d 1318, 1327 (D. Kan. 2007) *aff'd* 562 F.3d 1067, 1071 (10th Cir. 2009)). And "reselling products with inferior warranties constitutes a material difference negating the first sale defense." *RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 U.S. Dist. LEXIS 181781, at *25 (E.D. Mich. Dec. 23, 2014) (citing *Beltronics*, 562 F.3d at 1073), *report and recommendation adopted by* 2015 U.S. Dist. LEXIS 14914, *2 (E.D. Mich. Feb. 9, 2015). As a missing warranty term can amount to a material difference and a material difference can cause consumer confusion, LOMA's counter-complaint states a plausible claim for trademark infringement.

Resisting this conclusion, ABG Prime says LOMA's factual allegations of a material difference are too thin to allow the complaint to pass 12(b)(6) muster. Yet because any "question of materiality is a fact-based inquiry requiring an examination of the products and markets at issue . . . an allegation of a material difference cannot properly be dismissed on 12(b)(6) grounds." *Brilliance Audio*, 474 F.3d at 370 (internal quotations omitted). In any event, a material difference is "one that consumers consider relevant to a decision about whether to purchase a product." *Id.* (internal quotations omitted). So at this stage, "the threshold of materiality must be kept low to include even subtle differences between the products." *Id.* (internal quotations omitted). As LOMA says that its guarantee is "critical to inducing consumers to try LOMA brand products in the first place[,]"(R. 10, PID 96), and it is plausible that the missing warranty term could influence a consumer's decision, LOMA has properly pleaded a material difference.

In sum, LOMA has properly pled a trademark-infringement claim. The counter-complaint clears the Sixth Circuit's threshold inquiry and contains facts sufficient to plead a material difference likely to cause consumer confusion.

## B.

ABG Prime next moves to dismiss LOMA's false-designation-of-origin claim. To plead false designation of origin, LOMA must "demonstrate that: (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion." *Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc.*, 471 F. Supp. 2d 822, 831 (E.D. Mich. 2007) (citing *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998)); *see also* 15 U.S.C.§ 1125(a)(1)(A). ABG Prime says LOMA has not pleaded facts sufficient to establish that a consumer would believe LOMA had any affiliation with ABG Prime. (R. 12, PID 130–31.)

So LOMA cannot claim that ABG Prime's sale of LOMA products caused consumer confusion with respect to the origin of the products.

But LOMA properly pleads both elements. As to the first element, LOMA pleads that ABG Prime sells products on the Internet, and that suffices to establish the interstate commerce element. *See Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research, (FAIR)*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("We agree that the Internet is generally an instrumentality of interstate commerce" for purposes of Lanham Act); *see also Ford Motor Co. v. Heritage Mgmt. Group, Inc.*, 911 F. Supp. 2d 616, 622 (E.D. Tenn. 2012). And the likelihood of consumer confusion analysis mirrors the confusion analysis in a trademark-infringement claim. *Lorillard Tobacco Co.* 471 F. Supp. 2d at 831–32. As the factual allegations sufficient to plead a material difference likely to cause consumer confusion with respect to the infringement claim likewise establish confusion with respect to false designation of origin, LOMA has properly pleaded the second element. So LOMA's false-designation-of-origin claim survives ABG Prime's motion to dismiss.

*\*\*\**

To summarize, LOMA's counter-complaint survives ABG Prime's motion to dismiss. At this stage, LOMA has pleaded facts sufficient to establish that ABG Prime's Amazon store runs afoul of the Lanham Act. For the reasons stated, ABG Prime's motion to dismiss is DENIED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: June 12, 2018                      United States District Court Judge

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 12, 2018, by electronic and/or ordinary mail.

                                                    s/David P. Parker
                                                    DAVID P. PARKER