UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ABG PRIME GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> INNOVATIVE SALON PRODUCTS, <br> d/b/a LOMA, *et al.*, <br><br> Defendants. | Case No. 17-12280 <br> Honorable Laurie J. Michelson <br> Magistrate Judge R. Steven Whalen |

## OPINION AND ORDER GRANTING FLORIDA DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [34, 35, 39]

ABG Prime Group sells beauty products on Amazon. This includes LOMA hair-care essentials. But ABG is not an authorized retailer of LOMA products. So once LOMA discovered its products on ABG's Amazon.com store, LOMA filed a series of complaints with Amazon. Twice the complaints led Amazon to partially or totally suspend ABG's selling privileges. In turn, ABG sued LOMA, seeking a declaratory judgment that it did not infringe LOMA's trademark rights. Soon after, LOMA counter-sued, alleging trademark infringement and false designation of origin.

Initially, this case was entirely focused on LOMA's and ABG's trademark dispute. But after LOMA counter-sued, ABG amended its complaint to add new claims and new parties. The new parties, Demosthenes Prodromitis, All Alliance, and Total Image International, all reside in Florida (Florida Defendants). ABG says the Florida Defendants and LOMA are enmeshed in a vast, antitrust conspiracy designed to kick ABG off Amazon.

In response, the Florida Defendants move to dismiss the amended complaint for—among other things—a lack of personal jurisdiction. As will be explained, the Court agrees.

**I.**

Gary and Adam Greenberg along with Bryan Acrich incorporated ABG Prime, a Michigan LLC, to sell products on Amazon. (PageID.148.) Amazon's platform permits third-parties—like ABG Prime —to open the digital equivalent of a brick-and-mortar shop. (PageID.149.) ABG's third-party store at Amazon.com relies on Amazon's market share and fulfilment capabilities to generate an average of $10,000 in daily revenue. (PageID.149–150.) Among the products on its virtual shelves, ABG stocks LOMA hair-care essentials. (PageID.153.) ABG lawfully purchases LOMA shampoos, conditioners, and other hair-care products from a distributor only to turn around and resell the identical, unopened, and authentic product through its Amazon store. (Page.ID.153.)

In March 2017, LOMA complained to Amazon about ABG's store. According to LOMA's complaint, ABG's sale of LOMA products infringed on LOMA's trademark rights. (PageID.153.) Upon receiving the complaint, Amazon temporarily shuttered ABG's store, just as LOMA intended. (PageID.153, 156.) But Amazon policy requires a complainant complete a "test buy"—a controlled purchase of the allegedly infringing product to determine its authenticity—prior to claiming trademark infringement. (PageID.154.) LOMA had not completed a test buy prior to filing its complaint, so LOMA withdrew the complaint and Amazon permitted ABG to reopen. (PageID.154.)

Once reopened, ABG continued to sell LOMA products. And in the months after LOMA withdrew its first complaint, LOMA completed one test buy and then another. (PageID.154–155.) And after both test buys, LOMA confirmed the products' authenticity to ABG's lawyer. *Id.* LOMA again complained to Amazon, but this time making a more general claim that ABG was stealing

LOMA's intellectual property. (PageID.155.) Again Amazon closed ABG's store, but also permanently barred ABG from selling LOMA products. *Id.*

Sometime after its second suspension, ABG came to learn that All Alliance Products was the only other third-party storefront selling authentic LOMA goods on Amazon. (PageID.151.) ABG came to suspect that this competitor conspired with LOMA to stop it from selling LOMA goods. (Page.ID.151.) All Alliance is owned by a Florida LLC registered to a Florida citizen named Theo Prodromitis, the associate of yet a third Floridian, Demosthenes Prodromitis. (PageID.151–152.) ABG found out about the Floridians after Amazon forwarded LOMA's first complaint to ABG. The complaint appeared to be written by Cimos Angelis, LOMA's lawyer. (PageID.153.) But somehow ABG discovered that Demosthenes Prodromitis actually wrote it. (PageID.153.) ABG also learned that Angelis and Prodromitis have a friendship stretching back to high school. (PageID.152.)

Based on all of the above, ABG thinks LOMA and Demosthenes Prodromitis have conspired to expel ABG from Amazon. (PageID.152, 165.) According to ABG, LOMA gives All Alliance the exclusive right to sell LOMA products on Amazon. (PageID.152, 164.) In return, All Alliance polices the digital marketplace for unauthorized third-party retailers like ABG. (PageID.164.) All Alliance reports offenders to Angelis, and either Angelis or Prodromitis-as-Angelis complain to Amazon. (PageID.165.) Complaining to Amazon results in the third-party store temporarily losing its selling privileges. (PageID.166.) And the suspension of selling privileges eliminates competitors, specifically ABG. (PageID.165.)

Additionally, ABG alleges LOMA's complaints were fraudulent. ABG points to the early 2017 complaint Prodromitis-as-Angelis sent to Amazon. (PageID.165.) That first complaint said ABG's sales infringed on LOMA's trademark rights. (PageID.166.) But LOMA's test buys

3

confirmed ABG sold authentic LOMA products. (PageID.156.) So in ABG's view LOMA had no factual basis to accuse it of infringing, knew that the accusation would or could result in ABG's suspension, and yet made the accusation anyway. (PageID.156–57, 165.)

Accordingly, ABG's amended complaint added as defendants Demosthenes Prodromitis, All Alliance, and Total Image International LLC, all Florida residents. And the complaint alleges the Florida Defendants participated in a fraud and a conspiracy to violate antitrust laws.

In response, the Florida defendants move to dismiss the amended complaint for—among other things—want of personal jurisdiction in Michigan. (R. 34, 35.)

**II.**

"In deciding a motion to dismiss for lack of personal jurisdiction, the district court may rely upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017). Here, the parties have submitted affidavits and have not asked for discovery or an evidentiary hearing. So the Court must view the pleadings and affidavits in the light most favorable to ABG and ignore the Florida Defendants' claims to the contrary. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). And at this stage, as ABG does not assert general jurisdiction, ABG need only make a *prima facie* showing that this Court may exercise specific personal jurisdiction over each claim in this lawsuit. *See MAG IAS Holdings*, 854 F.3d at 899; *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012); *Air Products*, 503 F.3d at 550.

Ordinarily, an analysis of personal jurisdiction begins with the forum state's law of personal jurisdiction and ends with the due process clause. *See, e.g.*, *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). But here, the Florida Defendants do not contest the grasp of Michigan's long-

4

arm statute.[1] (PageID.371, 409.) Instead, the Florida Defendants argue only that requiring them to defend this suit in Michigan runs afoul of due process. (PageID.371,409–410.) Because the defense of personal jurisdiction can be waived, the Court will begin and end with the Florida Defendants' due process challenge. *See, e.g.*, *Knowledge Based Sols., Inc. v. Van Dijk*, No. 16-13041, 2017 U.S. Dist. LEXIS 144729, at *11 (E.D. Mich. Sept. 7, 2017).

Due Process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 134 S.Ct. at 1121. The nonresident must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U. S. 457, 463 (1940)). In the Sixth Circuit, courts apply a three-part test to decide whether the exercise of personal jurisdiction is consistent with due process. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). Part one asks whether the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state or caus[ed] a consequence in the forum state." *Id*. Part two looks to whether the suit's claims stem from the defendants' activities in the forum. *Id.*; *see also Walden*, 134 S.Ct. at 1121 (noting that "the defendant's suit-related conduct must create a substantial connection with the forum state"). And part three assesses whether the defendants' actions and their consequences "have a substantial enough connection" with Michigan to "make the exercise of jurisdiction over the defendant[s] reasonable." *Brewington*, 836 F.3d. at 550.

---

[1] The Florida Defendants cite Sixth Circuit case law holding that Michigan's long-arm statute extends only as far as the due process clause's reach. (PageID.371, 409.) But the Michigan Supreme Court holds that the long-arm statute for individuals requires a two-part analysis, and the due process clause only factors into the second. *See Green v. Wilson*, 565 N.W.2d 813, 816–17 (Mich. 1997).

5

**III.**

ABG says personal jurisdiction is proper here for two reasons. First, the Florida Defendants waived any personal jurisdiction defense when their local counsel filed a general appearance prior to contesting personal jurisdiction. Failing that, ABG says the Florida Defendants' participated in a conspiracy, punctuated with fraudulent conduct, aimed at shutting an online store run by a Michigan company. ABG says knocking the Michigan store out of the market damaged competition in the online marketplace so much so that Michigan bore the brunt of the conspiracy's effect.

The Court takes these arguments in turn.

**A.**

ABG insists that when the Florida Defendants' local counsel filed his one-sentence appearance, he explicitly waived any personal-jurisdiction defense. And this appearance led ABG to form a reasonable expectation that the Florida Defendants intended to defend the suit on its merits.

**1.**

Back in the day, a defendant's "general appearance" waived a personal-jurisdiction defense. *Dahlgren v. Pierce*, 263 F. 841, 846 (1920). As waiver was—and still is—an intentional relinquishment of a known right, whether a defendant made a general appearance was a case-specific question of a defendant's intent, gleaned by way of a defendant's conduct. *Id.* ("The question of general appearance is one of intent, actual or implied, and where the whole purpose of defendant's application to the court is to set aside an order because it has been made without personal jurisdiction over him, the conduct which will make the motion unavailing and destory [sic] its basis must be clear and unequivocal."); *see also Grable v. Killits*, 282 F. 185, 196 (6th Cir.

1922); *Twin Lakes Land & Water Co. v. Dohner*, 242 F. 399, 404 (6th Cir. 1917). If a defendant wished to challenge personal jurisdiction, they still had to appear, but they also had to make clear that their "appearance" was purely a legal apparition, solely to challenge the court's personal jurisdiction. *Grable*, 282 F. at 196; *Dahlgren*, 263 F. at 846.

The Federal Rules of Civil Procedure changed all that. Most importantly, conduct giving rise to a general appearance no longer waived a personal-jurisdiction defense. *See, e.g.*, *Orange Theater Corp.*, 139 F.2d at 874 ("Rule 12 permits a defendant to raise a jurisdictional defense even though his voluntary appearance has already called into existence the potential power of the court to adjudicate the merits of his controversy."); *see also Republic International Corp. v. Amco Engineers, Inc.*, 516 F.2d 161, 165 (9th Cir. 1975). And so, too, the Rules laid to rest any need for a special appearance. *See, e.g.*, *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 874 (3d Cir. 1944) *cert. denied*, 322 U.S. 740 (1944) ("A defendant . . . is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within."); *see also Bjorgo v. Weerden*, 342 F.2d 558, 560 (7th Cir. 1965); *Devine v. Griffenhagen*, 31 F. Supp. 624, 626 (D. Conn. 1940); *but see Means v. United States Conf. of Catholic Bishops*, 836 F.3d 643, 648 (6th Cir. 2016). Instead*,* the Rules provided two ways a defendant could waive a personal–jurisdiction defense. *See* Fed. R. Civ. P. 12(h) (waiver occurs when a party fails to "make it by motion under this rule" or neglects to "include it in a responsive pleading")

And yet, at first blush, a Sixth Circuit case appears to resurrect a third. *See Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011) (holding that "Defendant's attorney's entry of a general appearance with the district court . . . constituted a waiver of Defendants' personal jurisdiction defense."). Indeed, some courts interpret *Gerber* to stand for a bright-line-waiver rule anytime a

defendant's counsel files a one-sentence general appearance prior to challenging personal jurisdiction. *See, e.g.*, *M&C Corp. v. Erwin Behr GmbH & Co., KG*, No. 11-2167, 2012 U.S. App. LEXIS 25724, at *9 (6th Cir. Dec. 17, 2012); *Skg Int'l, Inc. v. Skg Italia, S.P.A*., No. 16-14510, U.S. Dist. LEXIS 100647, at *6 (E.D. Mich. June 29, 2017). But other courts read *Gerber* as endorsing a case-specific inquiry into a defendant's conduct. *See ABG Prime Group, Inc. v. Mixed Chicks, LLC*, No. 17-13257, at *15 (E.D. Mich. May 16, 2018); *Mattson v. Troyer*, 15-358, 2016 U.S. Dist. LEXIS 130451, *6 (N.D. Ohio Sept. 23, 2016); *Betco Corp. v. Peacock*, No. 12-1045, 2014 U.S. Dist. LEXIS 25972, at *3–4 (N.D. Ohio Feb. 28, 2014); *Pravettone v. Cargotec OYJ*, No. 13-11716, 2013 WL 3936467, at *5 (E.D. Mich. Jul. 30, 2013); *Allor v. ECA Mktg.*, No. 13-11142, 2013 U.S. Dist. LEXIS 179399, at *2 n.2 (E.D. Mich. Dec. 23, 2013).

Much of the split stems from many different Sixth Circuit opinions on the issue. *Gerber* says that a general appearance signals a defendant's voluntary submission to the court's jurisdiction. *Gerber*, 649 F.3d at 520. And to be sure, the Federal Rules of Civil Procedure provide some support for treating an appearance as a green light to litigate. *See* Fed. R. Civ. P. 16(b)(2). Yet *Gerber* sourced the general-appearance-is-waiver rule from *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110 (6th Cir. 1994). *See Gerber*, 649 F.3d at 520. *Reynolds* reasoned that "[u]nder F.R.C.P 12(h), a party waives the right to contest personal jurisdiction by failing to raise the issue when making a responsive pleading *or a general appearance*." *Reynolds*, 23 F.3d at 1121 (emphasis added). In support of the emphasized language, *Reynolds* in turn cited *Michigan Employment Securities Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1137 n.5 (6th Cir 1994)). Crucially, *In re Wolverine Co.* found waiver based on a fact-specific survey of defendant's "appearance *and* participation" in the case—not a one-sentence notice of appearance. 930 F.2d at 1137 n.2 (emphasis added). So, consistent with a general

8

appearance's long-standing meaning, *Gerber's* general-appearance rule is sourced from caselaw requiring a fact-specific analysis of defendant's litigation conduct.

Not surprisingly, a later Sixth Circuit panel explained that *Gerber* developed a conduct-specific forfeiture rule. *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012) (citing *Gerber* to explain that "[w]e recently clarified the test for finding *forfeiture* of a personal-jurisdiction defense through conduct") (emphasis added); *see also Gerber*, 649 F.3d at 521 n.1 (Moore, J., concurring) ("Waiver is different from forfeiture . . . I believe the term 'forfeiture' is a more accurate description of a defendant's loss of the right to challenge personal jurisdiction, but I will use 'waiver' . . . consistent with our circuit's established practice."); *cf.* Fed. R. Civ. P. 12(h) advisory committee's note (1966) (noting that Rule 12(h) is written clearly so as to "guard . . . against unintended waiver."). As *King* explains, forfeiting a personal-jurisdiction defense requires asking whether the defendants' conduct "has given the plaintiff 'a reasonable expectation that [Defendants] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.'" *King*, 694 F.3d at 657 (citing *Gerber*, 649 F.3d at 519). To determine forfeiture by conduct, courts must consider "all of the relevant circumstances." *King*, 694 F.3d at 659. So *King* places *Gerber* squarely on its foundation: a case-specific analysis of a defendant's conduct. *Cf. Gerber*, 649 F.3d at 520–21 (Moore, J., concurring) ("[*I*]*n light of the facts of this case,* a formalistic one sentence notice of appearance as counsel simply cannot amount to a waiver of the right" to challenge personal jurisdiction) (emphasis added)).

## 2.

So the Court turns to assessing "all the relevant circumstances" in this case. On November 13, 2017, Jordan Bolton, the Florida Defendants' local counsel, filed a one-sentence, general

9

appearance. (R. 26.) Less than a month later, and following unsuccessful settlement discussions between counsel, the Florida Defendants moved to dismiss for lack of personal jurisdiction. (R. 34, 35.)

Considering the relevant circumstances, the Florida Defendants did not forfeit a personal-jurisdiction defense.[2] Right off the bat, the Florida Defendants' appearance did not put the court to work. *See King*, 694 F.3d at 657 (forfeiture occurs where defendants' conduct "cause[s] the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.") (internal citations omitted). The appearance was nothing more than a lawyer choosing one way to comply with the Local Rules. *See* E.D. Mich. LR 83.25(a) ("An attorney must appear before representing a person or a party . . . ."); *see also* E.D. Mich. LR 83.20(f)(1). So the Court did nothing at all with respect to the Florida Defendants' pending their first responsive pleading or motion. Plus, filing an appearance allowed Bolton to receive notification of docket entries by email, offering the most efficient way to stay current on the case. And as ABG's counsel conceded at oral argument, Bolton's appearance did not give rise to a reasonable expectation that the Florida Defendants' intended to defend on the merits. To the contrary, in an affidavit and at oral argument, Bolton attests that in the month between appearance and motions, he told ABG's counsel that the Florida Defendants intended to raise a personal-jurisdiction defense. (PageID.587.) At oral argument, ABG's counsel confirmed Bolton's account. In sum, as the appearance neither put the court to work nor gave ABG the impression that the Florida Defendants intended to litigate the merits, the Florida Defendants may challenge personal jurisdiction. *See ABG Prime Group, Inc. v. Mixed Chicks, LLC*, No. 17-13257 (E.D. Mich. May 16, 2018).

---

[2] Nor did the Florida defendants waive it. Consistent with the Federal Rules of Civil Procedure, they raised personal jurisdiction by motion (R. 34, 35) prior to filing any responsive pleading. Fed. R. Civ. P. 12(h).

The Court thus turns to their challenge.

**B.**

Recall that ABG believes the Florida Defendants participated in a targeted conspiracy aiming to shut down ABG, a Michigan company. And the conspiracy involves acts of fraud perpetrated by a Floridian operating a Florida LLC selling products to Michiganders. Added together, the Florida Defendants' contacts with the forum are an injury to a Michigan company, an Amazon storefront selling products in Michigan, and the ripple effects of reduced competition on Amazon. Relying on *Calder v. Jones*, 465 U.S. 783 (1984), ABG says the Florida Defendants purposefully availed themselves of Michigan and the contacts relate to the suit, so exercising personal jurisdiction is reasonable and constitutional. (PageID.497.)

The Court disagrees—ABG cannot satisfy the Sixth Circuit's personal-jurisdiction test. *See Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Two principles animate the purposeful availment prong. First, "mere injury to a forum resident" is not enough of a "minimum contact" to support the exercise of jurisdiction. *Walden*, 134 S. Ct. at 1125. Second, the defendants' conduct must connect them "to the forum in a meaningful way." *Id.*

Nothing in the amended complaint or parties' briefing supports a finding that the Florida Defendants purposefully availed themselves of Michigan's privileges. ABG alleges a fraud and conspiracy that took place entirely in Florida and Washington. Prodromitis allegedly drafted fraudulent IP complaints using an Amazon platform and LOMA submitted them to Amazon. Prodromitis was in Florida, LOMA was in Washington, and Amazon received the complaints in Washington. So the "course and conduct" of the fraud and conspiracy had nothing to do with Michigan. *Walden*, 134 S.Ct. at 1124.

Michigan is only relevant to the fraud and conspiracy in so far as it injured ABG and ABG happens to be incorporated here. And an injury to a Michigan company is not evidence of defendant's contacts with Michigan itself. *See Walden*, 134 S.Ct. at 1122. ("[O]ur minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.") (internal quotations omitted). Outside of ABG's injury, the Florida defendants have *de minimis* contact with Michigan. Only All Alliance sells any product here, something less than 2% of sales, and only by operation of an Amazon store open for business across the web. (PageID.368.) As those sales have nothing to do with ABG's claims, any purposeful availment is ultimately unrelated to the suit and so not a basis for personal jurisdiction. *See Southern Machine*, 401 F.2d at 381–82. Moreover, neither Total Image nor Prodromitis have sold anything in Michigan since 2015. They do not have employees or distributors in Michigan, do not have bank accounts here, have never traveled here, and do not own any Michigan real estate. (PageID.405–406.) Ultimately, the Florida defendants' only connection to Michigan is their relationship to ABG as a competitor, and that is not enough to exercise jurisdiction. *See Walden*, 134 S.Ct. at 1123 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.)

Resisting this conclusion, ABG argues that the Florida Defendants had Michigan as its intended target all along. LOMA and the Florida Defendants knew ABG was in Michigan and they intended to restrain trade in Michigan by suspending ABG. Consistent with *Calder*, ABG's injury is really evidence that LOMA and the Florida Defendants engaged in a fraud and conspiracy with substantial Michigan effects. *See Calder*, 465 U.S. at 789.

*Calder* is inapposite. *Calder* involved a libel claim brought by a California resident against a Florida defendant. *Id.* The defendant in *Calder*—the National Inquirer—had numerous contacts

with the forum state. *See id.* (finding that the *Inquirer* called California sources, set the narrative in California, circulated their paper in California, and through all of the above caused reputational injury in California). The plaintiff's injury in *Calder* was a product of the defendants' forum-state conduct and not solely a result of Calder's residence in California. *See id.* at 788 (emphasizing the relationship between California, Calder, and the *Inquirer*). And even the "effects" of the injury were a product of the *Inquirer's* California contacts—the libel produced a reputational injury caused, in Calder's time, by a ripple effect across the *Inquirer's* California readership. *Id.* at 789; *see also Walden*, 134 S.Ct. at 1123–24. Summed up, the *Inquirer* had sufficient contacts with California to comport with due process.

The same cannot be said for the Florida Defendants. The Florida Defendants have minimal contacts here and ABG's injury has nothing to do with them. But for ABG's incorporation in Michigan, this suit could be argued in any number of states. Nor do the effects of ABG's injury ripple across the Great Lake State. The intended target of the fraud and conspiracy was Amazon's digital marketplace, not Michigan. So the Florida Defendants do not have sufficient contacts with Michigan to justify haling them into court here.

**IV.**

For the foregoing reasons, the Court GRANTS the Florida Defendants' motions to dismiss for lack of personal jurisdiction WITHOUT PREJUDICE.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: July 2, 2018                         U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

       The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 2, 2018.

                                                  s/Keisha Jackson
                                                  Case Manager