ABG PRIME GROUP, LLC,

     Plaintiff,

v.

INNOVATIVE SALON PRODUCTS, LLC,
d/b/a LOMA, *et al.*,

     Defendants.

Case No. 17-12280
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [24, 33]

---

ABG Prime Group sells beauty products on Amazon. This included LOMA hair-care essentials. But once LOMA and its founder, David Hanen, discovered LOMA's products on ABG's virtual shelves, ABG says LOMA and Hanen worked to force ABG off Amazon.com's marketplace.

According to ABG, LOMA and Hanen wished to maintain control over Amazon.com's beauty-product market. So they reached out to one of ABG's online competitors, All Alliance. LOMA and Hanen gave All Alliance the opportunity to be the exclusive LOMA retailer on Amazon. ABG says, in exchange, LOMA and Hanen required All Alliance to target ABG's store. To get Amazon to suspend ABG's store, All Alliance (along with LOMA and Hanen) fraudulently complained to Amazon that ABG was stealing LOMA's intellectual property. And, as intended, All Alliance's complaints, when coupled with LOMA's, led the retail giant to temporarily close ABG's store.

In turn, ABG sued LOMA, seeking a declaratory judgment that ABG did not infringe upon LOMA's trademark rights. LOMA counter-sued, alleging trademark infringement. ABG then

amended its complaint to add All Alliance and claims of antitrust conspiracy, business tort, and fraud.

Now LOMA and Hanen move to dismiss ABG's antitrust conspiracy and fraud claims. For the reasons set forth below, the Court will grant, in part, and deny, in part, the motions to dismiss.

## I.

LOMA and Hanen move to dismiss parts of ABG's amended complaint. So the following well-pled factual allegations from that complaint are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Gary and Adam Greenberg along with Bryan Acrich incorporated ABG Prime to sell products on Amazon. (R. 13, PageID.148.) Amazon's platform permits third parties—like ABG Prime—to open the digital equivalent of a brick-and-mortar shop. (*Id.* at PageID.149.) ABG's store, hosted on Amazon.com, relies on Amazon's market share and fulfilment capabilities to generate an average of $10,000 in daily revenue. (*Id.* at PageID.149–150.) Among the products on its virtual shelves, ABG stocks LOMA hair-care essentials. (*Id.* at PageID.153.) ABG purchases LOMA shampoos, conditioners, and other hair-care products from a distributor only to turn around and resell the identical, unopened, and authentic product through its Amazon store. (*Id.* at Page.ID.153.)

In March 2017, LOMA complained to Amazon about ABG's store. According to LOMA's complaint, ABG's sale of LOMA products infringed on LOMA's trademark rights. (*Id.* at PageID.153.) Upon receiving the complaint, Amazon temporarily closed ABG's store, just as LOMA intended. (*Id.* at PageID.153, 156.) But Amazon's policy requires a complainant to complete a "test buy"—a controlled purchase of the allegedly infringing product to determine its authenticity—prior to claiming trademark infringement. (*Id.* at PageID.154.) LOMA had not

completed a test buy prior to complaining, so LOMA withdrew the complaint and Amazon permitted ABG to reopen. (*Id.* at PageID.154.)

Once reopened, ABG continued to sell LOMA hair-care products. And in the months after LOMA withdrew its first complaint, LOMA completed two test buys. (*Id.* at PageID.154–155.) And doing so, LOMA confirmed the products' authenticity to ABG's lawyer. *Id.* Yet LOMA again complained to Amazon, but instead of asserting trademark infringement specifically, it more generally asserted that ABG was stealing its intellectual property. (*Id.* at PageID.155.) Amazon again temporarily closed ABG's store, but, this time, permanently barred ABG from selling LOMA products. *Id.*

Sometime after its second suspension, ABG came to believe that a Florida entity, All Alliance Products, was the only third-party storefront selling authentic LOMA goods on Amazon.[1] (*Id.* at PageID.151.) Because All Alliance was the only retailer, ABG suspected that All Alliance and LOMA entered into an exclusive arrangement, (R. 13, PID 152, 157), designed to remove competitors from Amazon (R. 13, PageID.157). Specifically, ABG thinks the arrangement was intended to target and remove ABG. (*Id.* at Page.ID.165.) According to ABG, All Alliance polices the digital marketplace for third-party retailers of LOMA products. (*Id.* at PageID.164.) Upon discovering a third-party retailer, either LOMA or All Alliance file complaints with Amazon. (*Id.* at PageID.165.) Complaining to Amazon results in the third-party retailer temporarily losing its selling privileges. (*Id.* at PageID.166.)

ABG unearthed this conspiracy after Amazon forwarded LOMA's first complaint to ABG. The complaint appeared to be written by Cimos Angelis, LOMA's lawyer. (*Id.* at PageID.153.)

---

[1] Yet the exhibits ABG attaches to its complaint contradict this assertion. ABG includes screenshots of multiple Amazon retailers selling LOMA products. (*See* R. 13-3, 13-4.)

But somehow ABG discovered that Demosthenes Prodromitis actually wrote it. (R. 13, PageID.153.) ABG learned that Prodromitis has some connection to All Alliance, (R. 13, PageID.146), and Angelis and Demosthenes Prodromitis have been friends since high school. (R. 13, PageID.152.) So ABG insists that only a conspiracy accounts for the relationship between All Alliance, Prodromitis, Angelis, LOMA, and Hanen. (R. 13, PageID.164.)

Also, ABG alleges LOMA's complaints to Amazon were fraudulent. (R. 13, PageID.165.) The first complaint said ABG's sales infringed on LOMA's trademark rights, but LOMA had yet to complete a test buy, so LOMA had no basis to make such a complaint. (R. 13, PageID.166.) And as LOMA's test buys confirmed ABG sold authentic LOMA products, the second complaint, claiming theft of LOMA's intellectual property, was equally fraudulent. (R. 123, PageID.156.) In ABG's view, LOMA had no factual basis to complain, knew Amazon would forward the complaints to ABG, intended ABG to stop selling LOMA products upon receiving the complaint, and knew Amazon would or could suspend ABG's entire store, resulting in revenue loss to ABG. (R. 13, PageID.156–57, 165.)

Accordingly, ABG amended its complaint to add new allegations and at least four (it is not clear) new counts. Chiefly, ABG adds two antitrust conspiracy claims—one federal and a parallel state one—along with a fraud claim. LOMA and its founder now move to dismiss those claims.

## II.

A motion to dismiss allows Hanen and LOMA to test the legal sufficiency of ABG's amended complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To pass muster at this stage, ABG must plead a set of facts that state a plausible claim for legal relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim means the complaint contains enough facts for the court to infer that LOMA and Hanen are liable for the alleged misconduct.

*See Iqbal*, 556 U.S. at 678. Finally, the procedural workings of a motion to dismiss require the Court to cull from the complaint any conclusory statements or rote repetition of claim elements, accept as true all well-pleaded factual content, and make all reasonable inferences in ABG's favor. *Iqbal*, 556 U.S. at 678; *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007).

### III.

### A.

ABG says LOMA and Hanen violated § 1 of the Sherman Act. (R. 13, PageID.164.) Specifically, ABG says LOMA and its founder conspired with All Alliance and Prodromitis to create an exclusive dealing arrangement on Amazon.com. (R. 13, PageID.164–66.) The conspiracy had an anti-competitive effect: "forcing out" ABG as an All Alliance competitor. (R. 13, PageID.166.) Specifically, ABG cannot sell LOMA products on Amazon. (*Id.*) So ABG claims it suffered an "antitrust injury that Section 1 of the Sherman Act is designed to prevent." (R. 13, PageID.166.)

In response, LOMA and its founder say ABG failed to plead any of the necessary elements of an antitrust claim. (R. 24, PageID.235–241.) They also say that ABG has not pled antitrust standing because it merely alleges an injury to itself—a competitor (*Id.* at PageID.241.)

Antitrust standing requires a more searching analysis than the injury, causation, and redressability test for Article III standing.[2] *See NicSand, Inc. v. 3M, Co.*, 507 F.3d 442, 459 (6th

---

[2] ABG has standing in the traditional sense. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). ABG was injured when Amazon twice shuttered its store; LOMA and Hanen ostensibly caused the injury by complaining to Amazon; and ABG's plea for monetary damages would redress the lost profits flowing from the injury.

Cir. 2007). Antitrust standing necessitates ABG plead antitrust injury. *Id.* Because ABG cannot

plead antitrust injury, the Court will start—and end—there.

**1.**

Antitrust injury can fall within one of four categories. *See, e.g.*, *Brunswick Corp. v. Pueblo

Bowl-O-Mat, Inc.*, 429 U.S. 477, 488–89 (1977) (reasoning that antitrust injury is "of the type the

antitrust laws were designed to prevent"; or an injury "that flows from that which makes the

defendants' acts unlawful"; or an injury "reflect[ing] the anticompetitive effect either of the

violation or of anticompetitive effects made possible by the violation"; or, finally, an injury that

"the type of loss that the claimed violations . . . would be likely to cause."); *see also* Ronald W.

Davis, *Standing on Shaky Ground: The Strangely Elusive Doctrine of Antitrust Injury*, 70 Antitrust

L.J. 697, 747–48 (2003). The Sixth Circuit homes in on two categories: "[p]laintiffs must prove

*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and

that flows from that which makes the defendants' acts unlawful." *Indeck Energy Servs. v.

Consumers Energy Co.*, 250 F.3d 972, 975 (6th Cir. 2000) (internal quotations omitted); *NicSand*,

507 F.3d at 450–51; *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 109–10;

*Brunswick*, 429 U.S. at 488; *Greater Rockford Energy & Technology Corp. v. Shell Oil Co.*, 998

F.2d 391, 395 (7th Cir. 1993).

Antitrust injury requires ABG allege an injury to competition "market-wide." *See E & L

Consulting, Ltd. v. Doman Indus.*, 472 F.3d 23, 28 n.3 (2d Cir. 2006); *see also NicSand*, 507 F.3d

at 450–51. And within the framework of antitrust law, a "market-wide" injury to competition is

one that somehow threatens the relevant market's efficiency. *See* 1 Phillip E. Areeda & Herbert

Hovenkamp, Antitrust Law § 100 (4th ed. 2013); Herbert Hovenkamp, Economics and Federal

Antitrust Law § 14.5 (1985). Normally, threats to market efficiency amount to threats to continued

low prices—"the primary goal of antitrust policy." Herbert Hovenkamp, Federal Antitrust Policy § 8.1 (4th ed. 2011); *see also Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 340 (1990); *Energy Conversion Devices Liquidation Trust*, 833 F.3d at 689–91. And the paradigmatic examples of threats to low prices are a predatory pricing scheme, *see Energy Conversion Devices Liquidation Trust*, 833 F.3d at 689–90, a recoupment scheme, *id.* at 690–91, or a price-fixing scheme, *see Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767–69 (1984), any of which would suffice to show antitrust injury under § 1 of the Sherman Act. *See generally Energy Conversion Devices Liquidation Trust*, 833 F.3d at 685–90.

But the essence of ABG's complaint is injury to ABG. The closest thing to an antitrust injury in ABG's complaint is the alleged exclusive arrangement. Yet the exhibits ABG attaches to the amended complaint contradict any assertion that All Alliance is the exclusive LOMA retailer on Amazon. ABG attaches screenshots of numerous Amazon.com stores selling LOMA products. *See* (R.13-3; 13-4.) So there is no reason to accept as true ABG's allegation of an exclusive arrangement. *See Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (internal quotations omitted); *Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1020 n.3 (E.D. Mich. 2014). Even so, other circuits hold that exclusive arrangements between manufacturer and distributor do not, on their own, run afoul of the Sherman Act. *See, e.g.*, *CDC Techs., Inc. v. IDEXX Lab., Inc.*, 186 F.3d 74, 80 (2d Cir. 1999). Exclusive arrangements may even benefit competition. *See Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 395 (7th Cir. 1984) (Posner, J.).

Instead of emphasizing threats to competition, ABG emphasizes its own losses, alleging antitrust injury due to the conspiracy's "anti-competitive effect on ABG." (R. 13, PageID.166.) ABG says it cannot sell LOMA products on Amazon, (R. 13, PageID.166), and the temporary

suspensions cost it some money (R. 13, PageID.174). But an aggrieved competitor seeking shelter under the antitrust laws must do more than allege an injury to itself. *See Indeck*, 250 F.3d at 976. Indeed, ABG's allegations are blind to the central thrust of the antitrust laws: "the protection of *competition* not *competitors*." *Brunswick*, 429 U.S. at 488; *see also Cargill*, 479 U.S. at 109–10; *NicSand*, 507 F.3d at 450; *Indeck.*, 250 F.3d at 976. As ABG does not plead facts sufficient to show a market-wide injury to competition, ABG's injuries are not antitrust injuries. *See Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993) (emphasizing the importance of antitrust injury lest "routine disputes between business competitors . . . be elevated to the status of an antitrust action, thereby trivializing the Act because of its too ready availability.").

## 2.

The only remaining issue is whether ABG could amend its (amended) complaint to plead antitrust injury. ABG claims it "is prepared to further develop its allegations and would request leave of Court do so." (R. 31, PageID.335.) But ABG never explains how it plans to "do so," and the Court has its doubts. At oral argument, ABG insisted the antitrust injury was grounded in ABG's expulsion from Amazon.com, which, again, is an injury to a solitary competitor (in a solitary distribution channel) that does not amount to antitrust injury. ABG also defines the relevant geographic market as the global reach of Amazon.com (R. 13, PageID.149, 164), and the relevant product market as beauty products (*Id.* at PageID.145, 148, 162). So the Court doubts ABG can plausibly plead, on a good faith basis, a set of facts establishing an injury to competition

on Amazon.com's beauty-products market stemming from an exclusive-dealing arrangement between LOMA and All Alliance.[3]

As amendment would be futile, the Court DISMISSES, with prejudice, ABG's antitrust conspiracy claims.

## B.

That leaves ABG's fraud claim. In Michigan, fraud has six elements: a defendant must make a material misrepresentation; the misrepresentation must be false; the defendant must make the misrepresentation knowing it to be false; the defendant must have intended the plaintiff to act on the misrepresentation; the plaintiff must act in reasonable reliance on the misrepresentation; and as a result suffer some injury. *See SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014) (citing *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567–68 (Mich. 2012)).

Hanen and LOMA say ABG's complaint fails to properly plead any of the elements, especially considering the heightened particularity requirement of Rule 9(b). (R. 24, PageID.243, 244–254.) Crucially, Hanen and LOMA insist ABG cannot allege a material misrepresentation because the alleged misrepresentations were all made to Amazon, a third party. (R. 24, PageID.244.) LOMA and Hanen contend the remaining pleading deficiencies all flow from that fatal flaw. (*See, e.g.*, R. 24, PageID.246 ("ABG has not pled reasonable reliance upon any of the Defendants' representations, since no representations were made to ABG by any of the defendants.").)

---

[3] On the same facts, ABG's amended complaint alleges a violation of the Michigan Antitrust Reform Act. (R. 13, PageID.167.) As Michigan's antitrust law runs parallel to the Sherman Act, ABG's failure to plead antitrust injury applies to the state claim as well. *See Manitou N. Am. v. McCormick Int'l*, No. 324063, 2016 Mich. App. LEXIS 198, at *14–17 (Mich. Ct. App. Feb. 2, 2016).

The Court does not agree with Hanen and LOMA. At least in the context of a business dispute involving monetary damages, ABG can maintain a fraud claim even though the alleged misrepresentation was made to a third party. *See Nernberg v. Pearce*, 35 F.3d 247, 251 (6th Cir. 1994) ("[A] plaintiff may maintain an action for fraud even when a misrepresentation has . . . been made to a third party with the intent and expectation that the misrepresentation would be repeated to induce reliance by a principle participant to a business undertaking. . . ."); *Cormack v. American Underwriters Corp.*, 288 N.W.2d 634, 637 (Mich. Ct. App. 1979) ("[W]here a party makes false representations to another with the intent or knowledge that they be . . . repeated to a third party for the purpose of deceiving him, that third party can maintain a tort action against the party making the false statements"); *see also* Restatement (Second) of Torts § 533 (1977) ("The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation . . . is made to a third person and the maker intends or has reason to expect that its terms will be repeated . . . to the other, and that it will influence his conduct in the transaction . . . involved.").[4]

At this stage at least, ABG pleads the elements of fraud with the requisite particularity. ABG claims Hanen and LOMA filed a false complaint with Amazon regarding LOMA's intellectual property rights. (R. 13, PageID.171.) LOMA and Hanen knew the complaint was false because when they filed it they knew ABG was selling authentic LOMA products. (R. 13,

---

[4] Though the parties do not cite it, the Court is aware that a later Michigan Court of Appeals decision appears to suggest otherwise. *See International Bhd. of Elec. Workers, Local Union No. 58 v. McNulty*, 543 N.W.2d 25, 30 (Mich. Ct. App. 1995) ("An allegation of fraud based on misrepresentations made to a third party does not constitute a valid fraud claim."). Read in context, however, *McNulty* involves a fraud claim lacking an allegation of reliance. *See McNulty*, 543 N.W.2d at 30 ("The union has not claimed that it acted in reliance on defendants' allegedly false statements."). So whatever *McNulty* may say about fraud claims based on statements made to third-parties, the case is distinguishable from this one. ABG alleges it relied on LOMA's statements to Amazon.

PageID.171, 156.) LOMA and Hanen knew Amazon would relay the complaints to ABG (R. 13, PageID.153), and knew Amazon would likely suspend ABG's selling privileges (R. 13, PageID.156, 159). Plus, LOMA and Hanen intended ABG to act in reliance on the complaint by removing LOMA products from its electronic shelves, which it did. (R. 13, PageID.172.) All of the above injured ABG to the tune of lost revenue following Amazon selling suspensions, and the permanent loss of the ability to sell LOMA products. (R. 13, PageID.163, 172, 174.) So ABG's fraud claim survives a motion to dismiss.

## IV.

In summary, the Court GRANTS IN PART and DENIES IN PART Hanen's and LOMA's motions to dismiss. (R. 24, 33.) Because ABG cannot plead antitrust injury, ABG's antitrust conspiracy claims fail as a matter of law. Yet ABG has stated a claim for fraud and narrated a set of facts with sufficient particularity to satisfy Rule 9(b)'s more robust pleading requirement.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: July 19, 2018                  U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 19, 2018.

s/Keisha Jackson
Case Manager